Thank you. Well, we'll take one more case before the 15-minute break, and the next case is David Thompson v. Regions Security. And Mr. Peterson should be here for Appellant Thompson. And for Regions, Anthony Sanchez is here. And Mr. Peterson, you may begin when you're ready. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, James Peterson on behalf of Plaintiff Appellant David Thompson. We really have a very simple issue before the Court, and that is whether or not an employer can pay an employee a reduced rate when that employee works a week that includes overtime versus a higher wage, and we're talking about hourly rates here, a higher hourly rate when that employee does not work overtime. So the facts of this case are as such, and they're very important. This is a de novo review based on a judgment on the pleadings that happened very early on in the case. And our complaint clearly states that Mr. Thompson, before January 2019, he worked at a $13 hourly wage. He was a security for Regions Security. Now, in January 2019, he started working overtime. He started working about 60 hours a week, 20 hours of overtime, give or take. Now, from January to July 2019, he was paid $13 an hour, and he was paid the time and a half rate at $13 an hour for the overtime. Now, in July 2019, Regions decided, we want to pay you $11.15 an hour. And mind you, this is all, he's working overtime this whole time. All right. So they changed his rate of pay for about a year. Correct. Okay. And then at the end. And so, I mean, is there anything in the Fair Labor Standards Act that prohibits an employer from changing an employee's rate of pay for a period of time? Absolutely, Your Honor. 29 CFR 778.5, the overtime provisions of the act cannot be avoided by setting an artificially low hourly rate upon which overtime pay is based. That's not the question that I asked, though. Okay. There's nothing in the Fair Labor Standards Act that prevents an employer from changing an employee's rate of pay, especially if they agree on it. They agree. I agree. Your Honor, as long as that, the wage scale, the new pay is proper under the FLSA. And that's the issue here. This was not proper under the FLSA. Let me ask you a question. It seems to me that this case comes down to whether this was a bona fide change in the rate of pay, or whether it was an artificial change in the rate of pay for essentially the purpose of paying less overtime or paying less overall wages. And I'm not sure that there's an answer to that in the record. I mean, if we look at Florida Statute 778.328, it tells us how we determine whether a reduction in the hourly rate is bona fide. And then you have to go through the is the plan is bona fide and there is no effort made to evade the overtime requirements of the act. It seems to me like there are some factual questions on that. Is that not the case? We believe so, Your Honor. We think that there is, unfortunately, there is very little to this record because this is we're basically just looking at the complaint as it was pled. And so would you agree with me then that if there were sufficient evidence to show that the employer here changed the rate of pay for, you know, reasons, for bona fide reasons, I mean, you know, maybe business had gotten slow and it was a question of whether we would pay this or let you go. And, you know, your client said, okay, I'm willing to take it. You know, I think would find that was bona fide. But if, you know, there's evidence that shows that the employer here did it just because the employer realized that the employee wasn't going to go anywhere and it could get away with paying less in overtime if it reduced the rate of the hour, I guess the hourly rate, then that would not be bona fide, right? So, Your Honor, certainly in the second situation when it's not bona fide, our argument, of course, and we stayed in the complaint is that this was not bona fide and that it would be a violation of the FLSA. Now, I think the first situation you contemplated is tricky because I think there that's exactly what we alleged. And it's very interesting that after the year that he worked at $11.15 an hour, he was bumped back up to $13 an hour for non-overtime weeks. Right. But I guess what I'm saying is it's not, I mean, maybe it is your position, but I assume it's not your position that an employer can't lower an hourly rate of pay if it's doing so for purposes other than avoiding the FLSA requirements. Correct. As long as that pay plan meets the requirements of the FLSA, that is correct. And so the question here is whether it was doing it for reasons other than to avoid the FLSA requirements or whether it was doing it in sort of a clever way to, you know, pay less under the FLSA. Well, that is and that is exactly what we allege. That the fact that they bumped him back up to $13 an hour at the end shows this was a scheme. Now, there was an intent to violate the Fair Labor Standards Act. That's certainly our argument. Now, a defendant will argue that the FLSA is a strict liability statute. Well, that's what I'm asking. What's your source for the fact that intent is an element necessary to impose FLSA liability? Sure. And it is a tricky question, Your Honor, because there's nothing that says specifically in the statutes that intent is a factor in FLSA. If somebody violates overtime accidentally, they're still in violation. Intent wasn't an issue there. But where it gets tricky is these regulations and the case law, they use words such as scheme, evasive. It's hard to separate intent with those kind of words. Like when you're claiming that somebody's scheming to violate the FLSA, intent really comes into that. And we think that certainly that was the issue here. Let me ask you, if we look at the regulations themselves, and I think maybe this is what you're talking about, and I just read 778.328A, it says the plan is bona fide and there is no effort made to evade the overtime requirements of the act. Is there a way to determine whether that's the case without assessing intent? And again, that's the tricky question, because we don't necessarily disagree. I'm going to ask your friend on the other side the same question, because I'm interested in hearing the answer from that side as well. But I wonder what your view on that is. Of course, I don't think so. And which is, there's a little bit of contradiction here, because we don't, let's say somebody's paid $4 an hour. Oh, we didn't mean to. That doesn't matter. That's a violation of the FLSA. It doesn't matter their intent. So it's very tricky. But that regulation does suggest that there's some intent involved. So your position is that it can be a strict liability statute, but when there are intentions to circumvent the requirements of the FLSA, then that can become relevant under the regulations. Yes, I agree with that, Your Honor. Now, and that's what happened in this case, or that's what we would like the chance to prove in this case. Where it gets more tricky is if maybe the facts show there wasn't an intent. That's something that I won't speak to, because that's a more complicated question. But what we're saying, and what was pled in the complaint, was that there was an intention to evade paying my client overtime for that year period, and that certainly that's a violation of the FLSA. And really what we get to, the overtime provisions say you need to pay an employee one and a half times the regular rate. And that's the issue here. What is the regular rate? And that comes down to Statute 778.108. I'm sorry, that's Regulation 778.108. And that's derived from case law, Supreme Court case law, that defines the regular rate as normal non-overtime weeks. What is paid in normal non-overtime week? And that's the issue, and that's what's been properly pled in the complaint, is that in normal non-overtime weeks, Mr. Thompson was paid $13 an hour. He was only paid... It was infrequent though, it was just for a certain period of time and a long period of time. That's what's in the complaint, right? Sure, sure. And he agreed to it. He agreed to it. Who agreed to it? Well, Mr. Thompson agreed to it. Understood. That comes back to whether or not an employee can waive their, knowingly or unknowingly, waive their rights under the FLSA. And they can't. You know, the case law is very clear on that. The FLSA protects employees, really, it's designed to protect employees. So they can't waive their rights. You know, when there's an FLSA case, the court has to review it for a settlement for whether or not it was proper. That's Lin's food. So our point here is that it doesn't matter if he agreed to it for a week, a month, a year, he can't waive his rights. And his right is to, excuse me, being paid proper overtime. And in this case, he was not. His regular rate for a year was based on an artificial rate, that $11.15 an hour. If you do 40 hours at $11.15 and 20 hours at time and a half, that's $780. That's the same exact rate as if he would have just been paid $13 an hour, but over, excuse me, over 60 hours, that equals $780 as well. So there was an intent to say, hey, we don't want to pay you. If, let's say they gave him time and a half on $13 an hour, that comes out to like, I think, $910, something like that. So there was this intent to evade the overtime policies of the FLSA. And that's really what we want the chance to prove, is that, you know, this was a motion for judgment on the pleadings. And frankly, we feel the district court erred. We want the chance to go back and show that this was a violation. Now, again, the defendants will mention essentially two defenses. Well, they're going to say that he was paid the minimum wage. Correct. Across the board, from beginning to end. Correct, Your Honor. And that kind of relates to the freedom of contract argument that we mentioned, that that is allowable as long as whatever is agreed to complies with the FLSA. Now, the other defense that they'll mention is, and this was something that was mentioned in the court order below, that it didn't fluctuate. You know, one of the regulations gives an example of this up and down, up and down, based on when he worked overtime, when he didn't work overtime. Now, we submit to Your Honors that it did fluctuate. Now, frequency wasn't often. The lower court, I believe, was looking at the frequency. But this fluctuated. It fluctuated when he was at 40 hours a week, he worked $13 an hour. When he worked 60 hours a week, they dropped it to $11.15 an hour. When he was back up to 40 hours a week, he was paid $13 an hour. That's a fluctuation, Your Honor. So for the defendant, and we believe where the lower court erred, is to find that frequency matters. Frequency does not matter, Your Honors. With that, I'll reserve for rebuttal. Thank you. All right. Thank you. Mr. Peterson, we'll hear from Mr. Sanchez. Thank you. Good morning, Anthony Sanchez, for the appellee regions. And obviously, this is an appeal from the order granting our motion for judgment on the pleadings. And accordingly, we, I think, have to look at the pleadings. And what the pleadings, in fact, state was that Mr. Thompson was paid a lawful wage rate of pay for every regular time hour that he worked, and that he was paid at the premium rate for every overtime hour that he worked throughout his employment. He was paid an overtime rate when his regular rate was $13 an hour, starting even before 2019 until July, when his rate was changed to $11.15. Can I ask you a question? Yes. I want to ask you the same questions that I asked your friend on this side over here. I'm assuming, based on your briefing, that your position is that FLSA is strictly a strict liability statute. Is that correct, or am I misunderstanding? No, you're not misunderstanding, Judge. Our position is exactly that, that the intent to violate the FLSA, it's not an element of the cause of action. It's not an element of any defense. So that being your position, what do you make of the regulations, the implementing regulations, which do seem, maybe you disagree, maybe you think that they don't require any kind of showing of intent. But it seems to me like, for example, 778.328A requires or considers intent. It says the plan is bona fide and there, it's bona fide if the plan is bona fide and there is no effort made to evade the overtime requirements of the act. How do we assess whether there is no effort made to evade the overtime requirements of the act without looking at evidence concerning intent? You know, I think we have to look at what the meaning of the word bona fide means in the jurisprudence interpreting the statute. Because when, again, the pleadings allege that this is an artificial rate, and an artificial rate is a specific thing. An artificial rate is a rate of pay that does not consider all revenue streams, all income earned by the employee for purposes of calculating the premium rate, because obviously the premium rate is based upon what the regular rate is. Now in this case, the premium rate is higher than minimum wage, excuse me, the base rate beginning in July of 2019 is higher than minimum wage, and it's undisputed that that's the only compensation that was received. So his actual rate of pay was 1115, which is a lawful rate of pay, and the overtime rate is based on the premium of that amount. But how does that, answer my question, which is what does it mean when it says the plan is bona fide if the plan is bona fide, and there's, and the second half here is what I'm really looking at. There is no effort made to evade the overtime requirements of the act. How do we assess that without looking at evidence concerning intent? Well, obviously there isn't a precedent establishing a test. There is, a precedent in the Ninth Circuit, the Parth case, which says that the court should look at three things, all of which are present here. Number one is, did the plaintiff, the employee, agree to the charge? Let me stop you right there. Okay. Okay, so if we're looking at whether the employee agreed, does it, are we assuming that if the employee doesn't quit, the employee agrees? Your Honor, one of the things that I'm looking at are not only the copious facts that are alleged in the complaint, but also the things that were raised in oral argument just a moment ago. But can you just answer that question for me, please? If we're, if we're looking to see if the employee agreed, is that based solely on whether the employee keeps working there? I think if the employee knows what his weight of pay is at the beginning of the work week, that it's not sprung on him, that it's not a surprise that he didn't agree to it, then he's agreed to it. Okay, so two things that I have some questions in response to that. The first thing is, there is an allegation here that it was sprung in the first week, I guess, of the newer rate, and that it was made retroactive. So perhaps even under that description, it would not qualify. But the second and more, the one that I want, that's more important to me to hear a response to, because I'm trying to understand, is how could it ever be that an employee would not agree to the rate, the cut in the pay rate, if he continued to work? In other words, the employee has to make a decision, I'm just going to quit, or I'm going to have to, or for purposes of FLSA, I agree to this. Is that what your position is? And if so, why? I mean, doesn't that seem like a problem? I don't think it's a problem, Judge, because we have to look also to the Supreme Court precedent in all of the case law, standing for the proposition that the employer and the employee have to be able to agree to a rate of pay and to conditions of employment. The rate of pay isn't the only thing that's at play here. An employee may want to work 30 more hours per week so that he doesn't have to, for example, moonlight somewhere else. I understand what you're saying about that, but what I don't understand is, I think you've just told me that an employee cannot invoke this FLSA right to make the claims that are being made here if the employee doesn't quit. Maybe I've misunderstood. No, Your Honor, I think the predicate of your question is that this is being imposed on the employee and that the employee doesn't want what he negotiated for, which are terms of employment that give him more hours of work and more money in his pocket at the end of the work week. Employers and employees have the right to negotiate for scheduling. I fully agree. I fully agree. I think the question here is whether this was that type of a situation in which case I think it was bona fide, or whether it was an attempt to circumvent the FLSA's requirements. I think that's what the question is here. I think what the employee alleges here is that his agreement to work for a reduced rate of pay in order to obtain 30 more hours of work per week is not enforceable. That's what he says, that's what he said at least in his response to the motion for judgment on the pleadings at page eight. He says, as he said in oral argument, an employee's agreement to work for a reduced hourly rate during weeks when the employee works overtime is not enforceable because the agreement evades the overtime protections of the FLSA. Number one, so having agreed to this and having obtained the extra hours of work, he now wants to sue the employer for having given him the extra hours of work that the employer does not have to give him under the FLSA. The employer, it behooves in fact the employer in this case. Security businesses is an outsourcing business. They sell personnel hours to clients at a fixed rate. It behooves him if he has for example 80 hours of time to fill to put two people to work there because otherwise when he's paying at the at the premium rate he's actually losing money. That's a reality. So he does not have to, he does not want to give, he has no reason to give this employee more hours, more overtime hours, but the employee may very well have a good reason for wanting those more hours. And that's why this is an important case because while the FLSA is a remedial statute of course, what the plaintiff is asking here is to basically take away the rights of an employee to bargain for these kinds of accommodations and scheduling and these kinds of agreements that completely comply with the strict requirements of the FLSA, which is that not less than a minimum wage and that you be not paid less than one and a half times the premium rate. Isn't that really a question of fact as to whether what the employer did was evading the overtime payment? I mean why did he reduce it to $11.15 instead of $11.25 or $11.50 if not to just stay with the $780 total? Whether he did it, first of all one of the things I want to point out is that one of the things that's mentioned in the brief there's a footnote in there that says oh he ends up making the same amount of money when he works 20 hours of overtime but the period of the violation he worked more than 20 hours of overtime. So he's making more hours at the reduced rate. This is a benefit to him that he has the right to contract for. Again, the employer doesn't have an obligation under the FLSA to give him overtime rights. This isn't, there is no injunctive relief under the FLSA. He can't force us to give him overtime wages, but he can certainly agree with the employer to take them upon a condition that makes it economically feasible. The employer doesn't have to lose money in order to comply with the FLSA. The employer just has to comply with the terms which are a minimum wage and a premium rate of wage. One of the things I also want to point out is in the appellant's brief, they've taken the position that when you're calculating what the applicable premium rate must be that you have to look not at the period of the violation. In this case where it's alleged under the complaint that he's working 30 to 50 hours of overtime, 80 to 90 hours per week, he's saying that in order to find out what the premium rate is that you have to go to some other hypothetical period when, and he said this again in the oral argument, you have to go to some other hypothetical period. You have to go to a pay period when he didn't work overtime hours. If you look at page three of his reply brief, that's what the heading says. It says and he relies on the Supreme Court dicta and on the language of a regulation for the proposition that you have to look at the non-overtime work week. But the non-overtime work week isn't a reference to some period prior to the period of the violation. The non-overtime work are the first 40 hours of the overtime violation. All of the cases interpreting how you calculate the overtime premium is by looking to the actual rate of pay during the period of the violation and if you're going to create a new standard where now you have to look at a different pay period, then employers aren't even going to know how to comply with the overtime provisions of the FLSA. If you have to go back, for example, as the appellant suggests to a period of time when the employee did not work overtime hours, what do you do in the situation where he's never not worked overtime hours or he worked non-overtime hours at different rates? It's normal and regular for rates to change, for the regular rate to change. So it becomes completely untenable to create an irregular rate of pay that's based on a pre-existing rate of pay from a period that is not the period of the alleged violation. We have to calculate overtime violations on a work week basis. The employer establishes a seven-day work week and it's those 40 hours plus more if there are overtime hours that you have to look at in determining what the regular rate is. And it's undisputed in this case that the only compensation that he received during the periods of the violation represent a lawful wage of pay as well above the minimum wage and that he was paid the corresponding premium. And so that's one of the reasons why there can be no violation under the allegations of this case. In fact, the complaint essentially alleges that the employer completely complied with the obligations to pay overtime under the FLSA. If there's no other questions, I would. All right. Thank you, counsel. And Mr. Peterson, you've reserved some time for rebuttal. So there was a hearing in the district court, right, on the pleadings in this case? There was a hearing? No, this was just a paper order, Your Honor. Okay. All right. So he agreed, he wanted to make more money, he wanted to work more hours. And he agreed to work more hours to make . . . he actually made more money under this arrangement than he would have had if the employer says, I'm not going to give you more hours, I'm going to keep your rate at thirteen and a half and pay you overtime. And so now he's suing the employer for the overtime that he didn't get when he wanted to work more hours so that he could make more money. So only on a gross scale did he make more money because he worked more hours. But when they changed his rate, it effectively made his base rate, I mean, his hourly rate still $13 an hour. But the question I think, I don't know if Judge Wilson is asking, I think he is, but if he's not, I am. The question is, did your client allege that he asked for more hours and the defendant said, I can only give you more hours if I reduce your rate of pay. But if you don't want to reduce the rate of pay, then I'll keep your pay the same, or something to that effect. There's no allegation in the complaint as to that, nothing on the record. That would be something that hopefully could be fleshed out if we were allowed to move forward. And so would you agree that if your client went to the employer and said, look, I really need to make some extra money and I want to work some extra hours. And the employer said, look, I can hire another person at the normal rate of pay and save myself money instead of having you work overtime hours at extra pay. But I'm willing to do it if you are willing to take a lower rate of pay so you can get more money because you get more hours. Would that, in your view, violate the FLSA? Yes, it would, Your Honor. And is that what you are alleging? Yes, because the rights under the FLSA cannot be waived. They cannot be knowingly bargained against or for. They are essentially absolute and it's up to the employer and employee to comply with them. So even if my client said that, and again, we don't know that, there's nothing on the record at this point. I mean, that's what I'm asking you. What is your position about what you've alleged in the complaint as to whether it meets the scenario that I've just described or not? The position in the complaint is that he continued to work for a year. So just in terms of what is in the complaint, you would have to infer from that that, well, he clearly wasn't so distraught, perhaps, that he had to quit. But again, our position is that he can't waive those rights under the FLSA, especially because the regular rate as defined was not the $11.15, it was the $13. And certainly he came to us after the fact. So it would be a violation of the statute for the employer to lower his regular rate, lower his regular rate of pay in order to give him more hours. If, if he never works a non-overtime week at that rate. But it's clear, I mean, based on the pleadings in this case, that he was given time and a half for all of the overtime that he worked across the board from beginning to end, which is what the statute requires. You're really relying on the Code of Federal Regulations, Section 29, which says you can't set an artificially low hourly rate. And that seems to be what the district judge was concerned about in this case. The allegations of the complaint are not sufficient to establish that the employer set an artificially low hourly rate. And, and that's again where the definition of the regular rate comes in, which, which is, is caught, is, is in the regulations, but it's also in Supreme Court case law, that a regular rate has to be based on normal non-overtime weeks. And you can infer from the complaint that he only worked normal non-overtime weeks at a $13 an hour rate. So that when they changed his rate down to $11.15 an hour, he never worked a normal non-overtime week at that, at that rate. So he always worked overtime at that rate. That was an improper reduction in his, in his wages. What is your support for the proposition that you have that you look to the last work week for which overtime was not paid to determine the regular rate? That is not actually what I'm proposing, Your Honor. I'm looking at, maybe I need to clarify. That's what you said in your, in your brief. That you look to the last work week for which overtime was not paid to determine the regular rate. Oh, understood, Your Honor. Okay. I thought you were talking about the end of his overtime period where he bumped. That's, that's where the, the definition of regular rate comes in. We've got to look at what a, sorry, what a normal non-overtime week is. And it just goes based on the facts that we have to go all the way back to before January 2019. Because. Didn't the Supreme Court in the Youngerwood case, Youngerwood versus Hardwood say that you look to the particular work week for which you were not paid overtime as a relevant unit to determine an FLSA violation? Right. And what you said, the week which you were not, within which you were not paid overtime. He was never not paid overtime. You said in your brief, you look to the last work week for which overtime was not paid. That's different than looking to the particular work week that he didn't make, did not get overtime paid because his rate was reduced. Well, in this case, I would submit to Your Honor that that's, it's the same thing. You have to go back to whenever he was not working overtime to determine what his regular rate was. And in this case, that would be the same, those weeks would be the same thing under those two analysis. Thank you for your time. All right. Thank you, counsel. The court will be in recess for 15 minutes. Thank you.